AMOUNT $ ___150___
SUMMONS ISSUED__Y-3___
LOCAL RULE 4.1_____
WAIVER FORM_____
MCF ISSUED_____
BY DPTY. CLK.____m____
DATE_____4-15-04___

# UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| CHRISTOPHER PEPIN, Individually and On Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) ) |
| VASO ACTIVE PHARMACEUTICALS, INC., STEPHEN G. CARTER and JOHN J. MASIZ, | ) ) ) ) ) |
| Defendants. | ) ) ) |

**04 CV 10763 RCL**

Civil Action No. _____ MAGISTRATE JUDGE Collings

CLASS ACTIONCOMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

**JURY TRIAL DEMANDED**

Plaintiff has alleged the following based upon the investigation of plaintiff's counsel, which included a review of SEC filings by Vaso Active Pharmaceuticals, Inc. ("Vaso" or the "Company"), as well as regulatory filings and reports, securities analysts' reports and advisories about the Company, press releases and other public statements issued by the Company, and media reports about the Company, and plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## INTRODUCTION

1.    This is a securities class action on behalf of all person who purchased or otherwise acquired the securities of Vaso between December 11, 2003 and March 31, 2004, inclusive (the

"Class Period"), against Vaso and certain of its officers and directors for violations of the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Vaso describes itself as an early-stage company focused on commercializing, marketing and selling over-the-counter pharmaceutical products, including analgesics; toenail fungal treatment; acne; first aid; hand and body lotion; and psoriasis treatments. Certain of Vaso's products incorporate the "VALE" transdermal delivery technology which Vaso licenses from BioChemics, Inc., Vaso's majority shareholder. During the Class Period, Vaso marketed the VALE technology under the PENtoCORE trademark and planned on rebranding deFEET athlete's foot anti-fungal medication product as Termin8 and Xtinguish.

3.      During the Class Period, defendants touted its clinical trial of its anti-fungal product as being "revolutionary", and stated that the trial was supervised by a team of independent physicians, analyzed by the New England Medical Center of Boston, and endorsed by the American Association of Medical Foot Specialists. Defendants also claimed that Vaso had attracted many institutional investors. Unbeknownst to the public, defendants' assertions were grossly misleading because (1) the New England Medical Center had nothing to do with the study associated with the trial, it was not involved in the selection of patients for the trial, it had not analyzed the trial and it was unable to draw any conclusions regarding the trial's effectiveness; (2) the trial was supervised by *one* podiatrist, not a group of independent physicians, who was selected by the Company's majority shareholder and compensated by the Company; (3) the Company's so-called "clinical trial" was more than half a decade old; (4) the Association of Medical Foot Specialists is not widely known in the medical community, and whose endorsement of Vaso's product was bargained for in exchange for a donation by Vaso to the Association's scholarship program; and (5) there was little, if any, institutional demand for Vaso's securities. Defendants were motivated to materially

2

misrepresent to the public the success of Vaso's products and the Company's financial condition in order to create favorable market conditions for the offering of thousands of shares of Vaso stock for proceeds of at least $15 million dollars. In addition, the Individual Defendants, who were also senior officials of BioChemics, Vaso's controlling shareholder, were also motivated to misrepresent the prospects of Vaso's products and business in order to protect BioChemics' financial interest in the Company. As a result of defendants' fraudulent scheme alleged herein, the price of Vaso securities were artificially inflated during the Class Period, causing injury to plaintiff and other members of the Class.

4.      On April 1, 2004, before the market opened, the Securities and Exchange Commission issued a press release announcing the temporary suspension of trading of Vaso stock because of "questions regarding the accuracy of assertions by VAPH [Vaso] and by others. . . concerning, among other things: (1) FDA approval of certain key products, and (2) the regulatory consequences of the future application of their primary product." As a result of the suspension, the price of Vaso shares on April 1, 2004 closed at $7.59 per share, the closing price on the day before.

5.      On April 7, 2004, Vaso issued a press release announcing that the SEC had suspended trading of its common stock and further, that the Company had received a letter from the Nasdaq Listing Investigations department regarding Vaso's compliance with Nasdaq listing requirements. In response to the Nasdaq letter, Vaso stated "In view of the substantial administrative and cash burdens being borne by the Company at this time, the Company has determined that it is in the best interest of shareholders to voluntarily cause its shares to be removed from Nasdaq".

## JURISDICTION AND VENUE

6.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§ 78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the SEC [17 C.F.R. § 240.10b-5].

3

7.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337 and Section 27 of the Exchange Act [15 U.S.C. § 78aa].

8.      Venue is proper in this District pursuant to Section 27 of the Exchange Act, and 28 U.S.C. § 1391(b). Many of the acts charged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this District, and Vaso is headquartered in this District.

9.      In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## THE PARTIES

10.     Plaintiff Christopher Pepin purchased Vaso common stock as described in the attached certification and was damaged thereby.

11.     Defendant Vaso is incorporated in Delaware and maintains it principal place of business at 99 Rosewood Drive, Suite 260, Danvers Massachusetts 01923.

12.     Defendant John J. Masiz was at all relevant times the President and Chief Executive Officer of Vaso, and Chief Executive Officer and Chairman of BioChemics, Vaso's controlling shareholder.

13.     Defendant Stephen G. Carter was at all relevant times the Chief Scientific Officer ("CSO") of Vaso and the CSO of BioChemics.

14.     Defendants Masiz and Carter are referred to herein as the "Individual Defendants."

15.     During the Class Period, each of the Individual Defendants, as senior executive officers and/or directors of Vaso, was privy to confidential and proprietary information concerning Vaso, its operations, finances, financial condition, present and future business prospects. The Individual Defendants also had access to material adverse non-public information concerning Vaso,

4

as discussed in detail below. Because of their positions with Vaso, the Individual Defendants had access to non-public information about its business, finances, products, markets and present and future business prospects via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or recklessly disregarded the fact that adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public.

16.     Each of the defendants is liable as a direct participant in, and a co-conspirator with respect to the wrongs complained of herein. In addition, the Individual Defendants, by reason of their status as senior executive officers and directors were each a "controlling person" within the meaning of Section 20 of the Exchange Act and had the power and influence to cause the Company to engage in the unlawful conduct complained of herein. Because of their position of control, the Individual Defendants were able to and did, directly or indirectly, control the conduct of Vaso's business.

17.     The Individual Defendants, because of their positions with the Company, controlled and/or possessed the authority to control the contents of its reports, press releases and presentations to securities analysts and through them, to the investing public. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading, prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Thus, the Individual Defendants had the opportunity to commit the fraudulent acts alleged herein.

5

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

18.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the securities of Vaso between December 11, 2003 and March 31, 2004, inclusive, and who were damaged thereby.  Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

19.     The members of the Class are so numerous that joinder of all members is impracticable.  As of March 24, 2004, Vaso had approximately 5.7 million shares of Class A common stock outstanding that were actively traded on the Nasdaq National Market.  While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Vaso or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

20.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

(a)     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

(b)     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

6

(i)      whether the federal securities laws were violated by defendants' acts as alleged herein;

(ii)      whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and financial statements of Vaso; and

(iii)      to what extent the members of the Class have sustained damages and the proper measure of damages.

21.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

### Materially False and Misleading Statements

22.    In January 2001, Vaso began operating as a division of BioChemics, Inc. By December 2003, Vaso's deFEET, Athlete's Relief and Osteon products were in the early stages of commercialization. In order to continue funding the commercialization of these products and the development and commercialization of other products, and to repay BioChemics for various operations charges it had advanced on behalf of Vaso, the Company made an initial public offering in December 2003.

23.    On December 11, 2003, the Company filed a Registration Statement on a Form SB-2 with the SEC for the initial public offering of 1,450,000 shares of Vaso common stock. According to the Registration Statement, the Company's plans for its key product were as follows:

7

Osteon and Athlete's Relief will now be marketed, distributed, commercialized and sold by us in the United States. During the course of the 12 month period immediately following this offering, all deFEET branded product currently in circulation will either be sold or removed from circulation and replaced with an identical product which will be commercialized, marketed and sold by us under the name Termin8 and/or Xtinguish. The formulation and functionality of Termin8 and Xtinguish will be identical to that of deFEET.

All three of these products have been through the research and development, pre-clinical study and clinical trial stages and have received FDA approval. They are either currently being marketed and commercialized or will enter the marketing and commercialization phase upon the consummation of this offering.

deFEET is a topically-applied, transdermal athlete's foot anti-fungal medication designed to eliminate athlete's foot infection in less than 10 days. It employs the VALE drug delivery system to effectively and efficiently deliver a mild antifungal agent called Tolnaftate into the skin surrounding the affected area. *In a pilot clinical trial, supervised by independent physicians and analyzed by the New England Medical Center in Boston, MA, 20 severely infected athlete's foot patients were treated and studied over a 42-day period*. There were two groups in the study, one treated with deFEET and the other with Schering-Plough's Tinactin®. In this study, deFEET eliminated the infection in 90% of the test group in 7 days and 100% of its patient population in 10 days. Tinactin®, which also uses Tolnaftate in the same concentration as deFEET, required 42 days to cure its first patient. These results demonstrate the ability of the VALE technology to deliver Tolnaftate much more effectively than a product not utilizing VALE technology ....[Emphasis added.]

24.    On February 19, 2004, the Company issued a release entitled "Vaso Active Pharmaceuticals Declares 3 for 1 Stock Split." The release touted the interest of institutional investors in the Company's stock, stating, in relevant part, as follows:

Vaso Active Pharmaceuticals, Inc. (Vaso Active) of Danvers, Massachusetts, announced today that the Board of Directors has declared a 3 for 1 stock split effective in the form of a 200 percent stock dividend payable on or about March 5, 2004 to holders of record of both Class A and Class B common stock as of February 23, 2004. Under the terms of this stock split, holders of the Company's Class A and Class B common stock will receive a dividend of two shares of Class A and Class B common stock for every one share of Class A and Class B common stock held on that record date. The dividend will be paid in authorized but unissued shares of Class A and Class B common stock of the Company.

The Company anticipates that the combined amount of issued and outstanding shares of both the Class A and Class B common stock after the split will be increased from 3,428,000 shares to 10,284,000 shares.

8

*John Masiz, Chief Executive Officer and Chairman of Vaso Active stated[:] "One of the ways many institutions measure investment appeal is through the liquidity of a security. Recently, there has been significant demand for our common stock at the institutional level. However liquidity has proved to be an obstacle. To help resolve this, the Board of Directors has declared this 3-for-1 stock split to increase our liquidity to the public market place, thus enhancing our securities' appeal to both retail and institutional investors."* [Emphasis added.]

25.    On March 17, 2004, Vaso issued a press release entitled "Vaso Active Pharmaceuticals Completes Financing at a Premium." The press release stated in part:

> Vaso Active Pharmaceuticals, (Vaso Active) of Danvers, Massachusetts, is pleased to announce that it has entered into a private placement transaction in the amount of $7,500,000 with an institutional investor. The investment which is in the form of an 18 month 2% Convertible Note, is convertible into shares of Class A common stock at a conversion rate of $9 per share, at the option of the investor. Both principal and interest are payable in cash or in shares of Class A common stock, at the option of Vaso Active. The purchase agreement includes anti-hedging provisions and the maturity date may be extended for up to two years at the option of the investor. In addition, Vaso Active issued to the investor warrants to purchase 166,667 shares of Class A common stock at an exercise price of $8.75 per share.

> Mr. John J. Masiz, President and Chief Executive Officer of Vaso Active was very pleased that Vaso Active was successful in consummating this institutional private placement at what Mr. Masiz considered favorable terms. "The ability to secure additional funds through the completion of this private placement gives Vaso Active significant new working capital to augment the working capital derived from its IPO. This will enhance Vaso Active's capital base with which to operate and will permit the Company to take advantage of strategic opportunities that arise in the course of growing our business. In addition, the execution of this agreement at a premium to the current market price of our common stock underscores the value of our technology to a material investor."

26.    The statements referenced above in ¶¶ 23 to 25 were materially false and misleading when made because they failed to disclose the following facts, among others:

(a)    The New England Medical Center in Boston, Massachusetts had nothing to do with the study associated with Vaso's clinical trial, including the selection of patients and gathering evidence;

(b)    The New England Medical Center was unable to conclude that the product was effective;

9

(c)    The clinical trial was only overseen by one podiatrist who was selected by the Company's controlling shareholder and compensated by Vaso;

(d)    The Company's so-called "clinical trial" was more than half a decade old.

(e)    The American Association of Medical Foot Specialists' purported "endorsement" of deFEET was virtually meaningless because the Association is not widely known in the medical community, and the endorsement was bargained for in exchange for a donation to the Association's scholarship program by Vaso.

(f)    There was little, if any, institutional demand for the Company's shares.

## THE TRUTH EMERGES

27.    On April 1, 2004, the SEC issued a news digest announcing the suspension of trading of Vaso common stock, stating in relevant as follows:

IN THE MATTER OF VASO ACTIVE PHARMACEUTICALS, INC.

The Commission announced the temporary suspension, pursuant to Section 12(k) of the Securities Exchange Act of 1934 (Exchange Act), of trading of the securities of Vaso Active Pharmaceuticals, Inc., (VAPH) of Danvers, Massachusetts at 9:30 a.m. on April 1, 2004, and terminating at 11:59 p.m. on April 15, 2004.

***The Commission temporarily suspended trading in the securities of VAPH because of questions regarding the accuracy of assertions by VAPH and by others, in press releases, its annual report, its registration statement and public statements to investors concerning, among other things: (1) FDA approval of certain key products, and (2) the regulatory consequences of the future application of their primary product.***

The Commission cautions broker dealers, shareholders, and prospective purchasers that they should carefully consider the foregoing information along with all other currently available information and any information subsequently issued by the company.

Further, brokers and dealers should be alert to the fact that, pursuant to Rule 15c2-11 under the Exchange Act, at the termination of the trading suspension, no quotation may be entered unless and until they have strictly complied with all of the provisions of the rule. If any broker or dealer has questions as to whether or not he has complied with the rule, he should not enter any quotation

but immediately contact the staff of the Securities and Exchange Commission in Washington, D.C. If any broker or dealer is uncertain as to what is required by Rule 15c2-11, he should refrain from entering quotations relating to VAPH's securities until such time as he has familiarized himself with the rule and is certain that all of its provisions have been met. If any broker or dealer enters any quotation, which is in violation of the rule, the Commission will consider the need for prompt enforcement action.

As a result of the suspension in trading, Vaso stock closed on April 1, 2004 at $7.59 per share, the closing price of Vaso stock on the previous trading day.

28.     On April 7, 2004, Vaso issued a press release over *Business Wire* revealing the suspension of trading of its stock by the SEC and that in response to a letter received from the Nasdaq Listing Investigations department regarding Vaso's compliance with Nadaq's listing requirements, the Company had voluntarily delisted its shares effective April 8, 2004. In the release, Vaso stated, in relevant part, as follows:

> Vaso Active Pharmaceuticals, Inc. (NasdaqSC: VAPH) today announced that the U.S. Securities and Exchange Commission (the "Commission") temporarily suspended trading of the securities of Vaso Active Pharmaceuticals, Inc. ("VAPH"), effective 9:30 a.m. on April 1, 2004. The suspension, by its terms, terminates at 11:59 p.m. on April 15, 2004. ***The Commission also stated that it temporarily suspended trading in the securities of the Company because of questions regarding the accuracy of assertions by the Company and by others, in press releases, its annual report, its registration statement and public statements to investors concerning, among other things: (1) the U.S. Food and Drug Administration ("FDA") approval of certain key products, and (2) the regulatory consequences of the future application of their primary product.***

> \* \* \*

> On April 5, 2004, representatives of the Company, together with newly retained special securities counsel and newly retained FDA counsel, met with the Staff of the Commission (the "Staff") for the purpose of discussing the concerns that led to the suspension of trading of the Company's securities. During that meeting, the Company stated its intention to review its public disclosure, press releases and other public statements and to take whatever remedial action maybe appropriate. It also represented that it would diligently seek to clarify the status of its products under current FDA regulations, would issue disclosure regarding the FDA regulation of its activities and products and the results of its dialogue with the

11

FDA, and would endeavor to resolve on a timely basis any concerns communicated by the Staff. *The Staff stated that it had been authorized by the Commission to seek injunctive relief against the Company, articulated the concerns that gave rise to the suspension of trading, and informally requested that the Company provide certain information to the Staff.* The Company agreed to cooperate with the Staff, committed to review its disclosure promptly and committed to take any remedial action that may be required. Due to the ongoing nature of this matter, the Company is unable to assess definitively its impact, except that *the Company has committed not to sell its products until this matter has been concluded to the satisfaction of the Commission.* The commitment to refrain from selling the Company's products may have a material adverse impact on the Company.

* * *

*By letter dated April 2, 2004, the Nasdaq Listing Investigations department of The Nasdaq Stock Market, Inc. ("Nasdaq") notified the Company that it commenced an inquiry to ensure the Company's ongoing compliance with Nasdaq's inclusion requirements and requested certain information from the Company.* The letter further disclosed that after review of the information provided by the Company, Nasdaq could take any action that may be appropriate under its Marketplace Rules including removal of the Company's securities from Nasdaq. In view of the substantial administrative and cash burdens being borne by the Company at this time, *the Company has determined that it is in the best interest of shareholders to voluntarily cause its shares to be removed from Nasdaq* so that the Company can focus its attention and resources on addressing the other issues addressed in this press release. The Company has been informed that its securities will be delisted, effective the opening of the markets on Thursday, April 8, 2004. [Emphasis added.]

## UNDISCLOSED ADVERSE INFORMATION

29.     The market for Vaso's securities was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and failures to disclose, Vaso's securities traded at artificially inflated prices during the Class Period. The artificial inflation continued until at least April 1, 2004. Plaintiff and other members of the Class purchased or otherwise acquired Vaso securities relying upon the integrity of the market price of Vaso's securities and market information relating to Vaso, and have been damaged thereby.

30.    During the Class Period, defendants materially misled the investing public, thereby inflating the price of Vaso's securities, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading.  Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, including, inter alia:

(a)    The Company's clinical trial was not supervised nor analyzed by a team of independent physicians at the New England Medical Center in Boston, Massachusetts;

(b)    The New England Medical Center had nothing to do with the study associated with Vaso's clinical trial, including patient selection or gathering evidence;

(c)    The Company's clinical trial was more than half a decade old.

(d)    The American Association of Medical Foot Specialists is not a widely known association the medical community and its "endorsement" was bargained for in exchange for a donation to the Association's scholarship program by Vaso.

(e)    There was little, if any, institutional demand for the Company's shares.

31.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by plaintiff and other members of the Class.  As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about Vaso's business, prospects and operations.  These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Vaso and its business, prospects and operations, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and misleading

13

statements during the Class Period resulted in plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

## ADDITIONAL SCIENTER ALLEGATIONS

32.    As alleged herein, defendants acted with scienter in that defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding Vaso, their control over, and/or receipt and/or modification of Vaso's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Vaso, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD-ON-THE-MARKET DOCTRINE

33.    At all relevant times, the market for Vaso's securities was an efficient market for the following reasons, among others:

34.    Vaso's stock met the requirements for listing, and was listed and actively traded on the Nasdaq National Market, a highly efficient and automated market;

35.    As a regulated issuer, Vaso filed periodic public reports with the SEC and the Nasdaq National Market;

36.    Vaso regularly communicated with public investors _via_ established market communication mechanisms, including through regular disseminations of press releases on the

national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

37.    Vaso was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

38.    As a result of the foregoing, the market for Vaso's securities promptly digested current information regarding Vaso from all publicly available sources and reflected such information in Vaso's stock price. Under these circumstances, all purchasers of Vaso's securities during the Class Period suffered similar injury through their purchase of Vaso's securities at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

39.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Vaso who knew that those statements were false when made.

15

## FIRST CLAIM FOR RELIEF

### VIOLATION OF SECTION 10(b) OF
### THE EXCHANGE ACT AGAINST AND RULE 10b-5
### PROMULGATED THEREUNDER AGAINST ALL DEFENDANTS

40.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

41.    During the Class Period, Vaso and the Individual Defendants, and each of them, carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Vaso's securities; and (iii) cause plaintiff and other members of the Class to purchase Vaso's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

42.    Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Vaso's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

43.    In addition to the duties of full disclosure imposed on defendants as a result of their making of affirmative statements and reports, or participation in the making of affirmative statements and reports to the investing public, defendants had a duty to promptly disseminate truthful information that would be material to investors in compliance with the integrated disclosure provisions of the SEC as embodied in SEC Regulation S-X (17 C.F.R. Sections 210.01 et seq.) and

16

Regulation S-K (17 C.F.R. Sections 229.10 et seq.) and other SEC regulations, including accurate and truthful information with respect to the Company's operations, financial condition and earnings so that the market price of the Company's securities would be based on truthful, complete and accurate information.

44.    Vaso and the Individual Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Vaso as specified herein.

45.    These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Vaso's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Vaso and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of Vaso's securities during the Class Period.

46.    Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports;

17

(iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

47.    The defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Vaso's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by defendants' overstatements and misstatements of the Company's business, operations and earnings throughout the Class Period, defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

48.    As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Vaso's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of Vaso's publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or

recklessly disregarded by defendants but not disclosed in public statements by defendants during the Class Period, plaintiff and the other members of the Class acquired Vaso securities during the Class Period at artificially high prices and were damaged thereby.

49.    At the time of said misrepresentations and omissions, plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had plaintiff and the other members of the Class and the marketplace known of the true financial condition and business prospects of Vaso, which were not disclosed by defendants, plaintiff and other members of the Class would not have purchased or otherwise acquired their Vaso securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

50.    By virtue of the foregoing, defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

51.    As a direct and proximate result of defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

### VIOLATION OF SECTION 20(a) OF
### THE EXCHANGE ACT AGAINST THE INDIVIDUALS DEFENDANTS

52.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

53.    The Individual Defendants acted as controlling persons of Vaso within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the

19

SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

54.    In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

55.    As set forth above, Vaso and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' wrongful conduct, plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays for judgment as follows:

(a)    Declaring this action to be a proper class action pursuant to FRCP 23;

(b)    Awarding plaintiff and the members of the Class damages, interest and costs;

(c)    Awarding reasonable costs and attorneys' fees; and

(d)    Awarding such equitable/injunctive or other relief as the Court may deem just and proper.

20

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: April 15, 2004

Respectfully submitted,

**MOULTON & GANS P.C.**

By: _____

Nancy Freeman Gans, BBO #184540
33 Broad Street, Suite 1100
Boston, MA 02109
Telephone: (617) 369-7979

**MILBERG WEISS BERSHAD HYNES
& LERACH LLP**
Steven G. Schulman
Peter E. Seidman
Andrei V. Rado
Sharon M. Lee
One Pennsylvania Plaza
New York, NY 10119
Telephone: (212) 594-5300

**LAW OFFICES OF CHARLES J. PIVEN, P.A.**
Charles J. Piven
The World Trade Center-Baltimore
401 East Pratt Street, Suite 2525
Baltimore, Maryland 21202
Telephone: (410) 986-0036

*Plaintiff's Counsel*

## PLAINTIFF'S CERTIFICATION

Christopher Pepin ("Plaintiff") declares under penalty of perjury, as to the claims asserted under the federal securities laws, that:

1.   Plaintiff has reviewed the complaint and authorized its filing.

2.   Plaintiff did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action.

3.   Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.   Plaintiff's transactions in Vaso Active Pharmaceuticals, Inc. securities during the Class Period are as follows:

| # of Shares | Purchased (P) / Sold (S) | Price Per Share | Date of Purchase/Sale |
|---|---|---|---|
| 360 | P | $11.4997 | 03/04/04 |
| | | | |
| | | | |

5.   During the three years prior to the date of this Certification, Plaintiff has not sought to serve or served as a representative party for a class under the federal securities laws.

6.   Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 12th day of April 2004.

Christopher Pepin